Ronald H. Williams and Ann G. Williams v. Commissioner.
Williams v. Commissioner
Docket No. 93084.
United States Tax Court
T.C. Memo 1962-193; 1962 Tax Ct. Memo LEXIS 115; 21 T.C.M. (CCH) 1045; T.C.M. (RIA) 62193; August 15, 1962
Harold M. Everton, Esq., The Alameda, San Jose, Calif., for the petitioners. Robert H. Elliott, Jr., Esq., for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: The respondent has determined a deficiency in the income tax of the petitioners for the calendar year 1956 in the amount of $45,414.01. Certain adjustments have been agreed to and the sole remaining issue is whether respondent has erred in disallowing an interest deduction under section 163. [1]
Some of the facts have been stipulated and are so found. Petitioners are husband and wife and resided in Palo Alto, California, at all times material hereto. They filed a joint, cashbasis return for the year in issue with the district director *116 of internal revenue at San Francisco, California. In 1956, R. G. Bridges (hereinafter referred to as Bridges), district manager at Redwood City, California, for the Canada Life Assurance Company, discussed with petitioners the possibility of the purchase of U.S. Treasury notes using only a small amount of their funds and obtaining as a result of the purchase substantial interest deductions for Federal income tax purposes. Bridges subsequently negotiated for the purchase of such notes with J. D. O'Donnell (hereinafter referred to as O'Donnell) who was vice president of Millridge Corporation and vice president of D. H. Blair & Co., Inc. (hereinafter referred to as Blair & Co.), both of which are New York corporations. On December 27, 1956, Bridges completed the negotiations for the purchase of the U.S. Treasury notes by means of a telephone call to O'Donnell. On December 27, 1956, following that telephone call, Bridges mailed to O'Donnell, as vice president of Millridge Corporation, petitioners' check for "prepaid interest" in the amount of $67,325.79 payable to Millridge Corporation, a promissory note for $948,285 signed by petitioners, payable to Millridge Corporation, and calling *117 for approximately 4 percent interest, and a letter signed by petitioners directing Joseph Faroll & Co. (hereinafter referred to as Faroll & Co.), a New York broker, to deliver U.S. Treasury notes, 1 1/2's of October 1, 1959, in the face amount of $1,000,000 to Irving Trust Company of New York, New York, (hereinafter referred to as Irving Trust) against payment of $948,285. In addition to the foregoing, on December 27, 1956, Bridges mailed a separate letter to O'Donnell, as vice president of Blair & Co., enclosing a promissory note for $54,000, bearing 4 1/2 percent interest, signed by petitioners, and payable to Blair & Co. The promissory note for $948,285 payable to Millridge Corporation and the promissory note for $54,000 payable to Blair & Co. were essentially identical except for the amounts involved. The promissory notes stated that petitioners had deposited with the lender "$1,000,000 U.S. Treasury notes 1 1/2's 10/1/59." The note to Blair & Co. added that it was "subject to Millridge Corporation." The notes also stated that the lender had the "right, without notice to the undersigned, to hypothecate, sell or lend, to itself or others, the property pledged with it or any *118 part thereof." Petitioners were entitled to prepay the promissory notes, but there would not be any refund of interest. The promissory notes also provided that the pledged Treasury notes would be returned upon the payment of the amount due on the promissory notes. On December 28, 1956, the day after Bridges mailed the above-mentioned items to O'Donnell, Faroll & Co. purchased for the account of petitioners U.S. Treasury notes, 1 1/2's of October 1, 1959, in the face amount of $1,000,000. The price was $94-32/64ths on which interest of $3,750 had accrued. The total cost of the notes plus accrued interest was $948,906.25. Petitioners were notified by Faroll & Co. of the purchase. The settlement date for the transaction was December 31, 1956. A like quantity of identical U.S. Treasury notes was sold for the account of Millridge Corporation on that same day by Faroll & Co. The price was $94-31/64ths and interest of $3,750 had accrued. The total proceeds from these notes, including accrued interest, was $948,515.62. December 31, 1956, was the settlement date for this transaction also. On the settlement date, December 31, 1956, pursuant to petitioners' letter of instructions, Farroll *119 & Co. delivered the U.S. Treasury notes purchased for the account of petitioners to Irving Trust. The promissory note to Millridge Corporation and the letter from petitioners to Faroll & Co. directing delivery of the Treasury notes to Irving Trust were written prior to the purchase of the notes for petitioners' account and both referred to payment of $948,285. Millridge Corporation advised Faroll & Co. by letter on December 31, 1956, that the total cost of $948,906.25 would be paid. At the direction of Millridge Corporation, Irving Trust received the Treasury notes and paid Faroll & Co. $948,906.25. Petitioners were advised by Faroll & Co. of the delivery of the notes to Irving Trust. On the same date, December 31, 1956, Millridge Corporation directed Irving Trust to deliver U.S. Treasury notes in the face amount of $1,000,000 to Faroll & Co. against payment of $948,515.62. They were so delivered and Faroll & Co. paid Irving Trust $948,515.62. On the same date, December 31, 1956, O'Donnell, as vice president of Blair & Co., mailed a check for $54,000 to petitioners. The promissory notes of petitioners payable to Millridge Corporation and Blair & Co. were ultimately assigned to *120 Robert W. Miller (hereinafter referred to as Miller), the sole shareholder of Blair & Co. On September 22, 1959, Miller wrote to petitioner Ronald H. Williams, advising him of the assignment of the promissory notes and requesting that he remit $4,728.75, allegedly the balance due on the notes. There followed a substantial correspondence concerning the precise amount due from petitioners to Miller. On February 8, 1960, petitioner Ronald H. Williams mailed a check for $10.76 to Miller. Petitioners made no further payments of interest or principal on account of the notes to Millridge Corporation and Blair & Co. Neither Miller, Millridge Corporation, nor Blair & Co. made any purchase of U.S. Treasury notes to replace the notes pledged by petitioners. No Treasury notes were ever delivered to petitioners. One hundred percent of the stock of Blair & Co. was owned by Miller. The stock of Millridge Corporation was owned as follows: Blair & Co.
50 percent
Mr. Futterman
25 percent
Harry Janin
25 percent Harry Janin was the accountant for Miller and Millridge Corporation. Petitioners made the following additional payments with regard to the above transaction: Date
Payee
Purpose
Amount
4/ 1/57
Blair & Co.
"Interest" 12/27/56-3/1/57
$ 641.25
7/ 2/57
Blair & Co.
"Interest on loan"
607.50
10/ 7/57
Blair & Co.
"Interest on loan"
607.50
1/ 7/58
Blair & Co.
"Interest on loan"
607.50
4/10/58
Blair & Co.
"Interest on loan"
607.50
7/ 7/58
Blair & Co.
"Interest on loan"
607.50
9/30/58
Blair & Co.
"Interest on loan"
607.50
2/ 2/59
Blair & Co.
"Interest on loan"
607.50
6/ 1/57
Millridge
"Interest on loan"
7,500.00
12/ 1/57
Millridge
"Interest on loan"
7,500.00
6/10/58
Millridge
"Interest on loan"
7,500.00
12/20/58
Millridge
"Interest on loan"
7,500.00
6/19/59
Millridge
"Interest on loan"
7,500.00
2/ 8/60
Robert W. Miller
Balance due on loans from Millridge Cor-
poration and Blair & Co.
10.76
*121 Petitioners received checks in the following amounts from Millridge Corporation: Date
Amount
4/ 1/57
$7,500.00
10/ 1/57
7,500.00
4/ 1/58
7,500.00
10/27/58
7,500.00
4/15/59
7,500.00 These checks were each accompanied by letters which were similar to the following one: Enclosed you will find interest payment of $7,500.00 representing the April 1st, 1957 coupon on the 1,000,000 1 1/2s of October 1st, 1959, which are pledged with this corporation. As a result of the above transaction petitioners claimed an interest deduction on their 1956 Federal income tax return of $67,325.79. Petitioners claimed an interest deduction on their 1957 Federal income tax return in the amount of $1,856.25 as a result of the payments during that year to Blair & Co. Petitioners reported $51,093.75 long-term capital gain on their 1959 Federal income tax return on the "maturity" of the Treasury notes. Millridge Corporation reported its income tax on a November 1 - October 31 fiscal-year basis. At the beginning of fiscal year November 1, 1956, to October 31, 1957, Millridge Corporation had a deficit in earned surplus of $12,058.15. There was $725 cash on hand. At the end of *122 the fiscal year there was a $4,181.05 deficit in earned surplus and the cash on hand was $143,839.51. Millridge Corporation did not have sufficient cash on hand to loan petitioners approximately $948,000 during any time material hereto. Petitioners did not purchase $1,000,000 U.S. Treasury notes, nor did petitioners borrow any funds from Millridge Corporation or D. H. Blair & Co. The $67,325.79 deducted as "interest" by petitioners in 1956 in connection with this transaction did not constitute interest and was not deductible as such for Federal income tax purposes. We find the instant proceeding indistinguishable in principle from Eli D. Goodstein, 30 T.C. 1178, affd. 267 F. 2d 127 (C.A. 1). Cf. also, Knetsch v. United States, 364 U.S. 361; Perry A. Nichols, 37 T.C. 772, on appeal (C.A. 5); Gordon MacRae, 34 T.C. 20, remanded on other grounds 294 F. 2d 56 (C.A. 9), certiorari denied 368 U.S. 955; Danny Kaye, 33 T.C. 511, affd. 287 F. 2d 40. As did these prior cases, we hold that the transactions material hereto are lacking in substance and are shams which *123 have no effect for tax purposes. Petitioners attempt to distinguish the instant case from the others by asserting that they entered into the transactions not only with a view to obtaining an interest deduction, but also with a view that a substantial profit was reasonably foreseeable. The record clearly establishes that the principal purpose of the transactions was the creation of a deduction for tax purposes. Petitioner offers no support for his purported belief that there might be a substantial increase in the selling price of 1 1/2 percent U.S. Treasury notes during the periods material hereto. As we stated in the MacRae case, supra, at p. 28: Petitioners here purported to enter into a profit-seeking transaction. Yet under the circumstances, no reasonable chance existed of realizing a profit, apart from the "tax gimmick" feature * * * Petitioners also seek to distinguish the precedents by asserting they lacked knowledge of the mechanics of the transactions. We also disposed of this issue in MacRae, supra, at p. 28: In any event, regardless of petitioners' ignorance of the actual steps taken, they may deduct the amounts in question as interest only if they *124 were in fact paid as interest on an existing indebtedness, which they intended in good faith to create. These payments do not fit such description. They were in reality the net consideration paid not for a loan, but for a tax deduction, and so viewed are plainly outside of the statute permitting a deduction for interest paid on an indebtedness. * * * The transactions were shams and must be disregarded for tax purposes. Petitioners did not buy any Treasury notes, did not borrow large sums of money and did not pay any amount deductible as interest in the transactions material hereto. Respondent's determination is sustained. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩